UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

RALPH D. PITTLE, ET AL             CIVIL ACTION

VERSUS

                                                        NO. 09-620-JJB-SCR

DANIEL MCGLYNN., ET AL

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Both motions are opposed; there is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated here in the Court GRANTS Plaintiff's motion (doc. 90) in part and GRANTS Defendants' motion (doc. 95) in part. Defendants' motion for summary judgment on their counterclaim is DENIED.

**Background**

According to the complaint (doc. 1), Plaintiffs, Ralph Pittle and Medical Consultants of Washington, PLSC, allege that in 2007 they entered into an agreement with Defendants, Daniel McGlynn and McGlynn & Glisson APLC. Under the terms of the alleged agreement, Plaintiffs associated with and provided Defendants with information gathered from past personal injury suits against drug companies that manufactured the drug metoclopramide both in its generic form and under the brand name Reglan (collectively "Reglan"). In exchange, Defendants would pay Plaintiffs one million dollars ($1 million), which

1

was to be paid from twenty-five percent (25%) of the Defendants' net attorney's fees earned in future Reglan lawsuits.

In August, 2009, Plaintiffs filed this suit seeking recovery of fees based upon the agreement. (Doc. 1). On August 10, 2010, the Court partially granted Defendants' Rule 12(b)(6) motion, dismissing Plaintiffs' claims for fraud and also for punitive damages, but not Plaintiffs' breach of contract claim. (Doc. 62).

## **Summary of the Arguments**

In their motion for summary judgment, Plaintiffs argue there is no genuine dispute as to material fact in respect to their breach of contract claim for the following reasons: 1) the Defendants undertook an obligation to perform; 2) they did not perform that obligation; and 3) that this failure to perform caused Plaintiffs damages. (Doc. 90, p. 4-6). Plaintiffs point to a pair of emails Plaintiff Pittle and Defendant McGlynn exchanged on March 12-13 of 2007 as evidence of the existence of a contract. (Doc. 90-3). They point to interrogatory responses from McGlynn as evidence that McGlynn has used this information to earn at least $1,150,856.94 in fees. (Doc 90-4). Plaintiffs point to Defendants' lack of denial as evidence that they have not received any of the money they are allegedly owed. (Doc. 90, p. 5).

Plaintiffs also assert they are entitled to "consequential" damages for a bad faith breach under Louisiana Civil Code article 1997. (Doc. 90, p. 6). In his affidavit supporting the motion, Plaintiff Pittle alleges he has suffered approximately $30 million in losses due to the alleged breach. (Doc. 90-5).

2

In opposition, Defendants contend there is no genuine dispute as to material fact regarding the alleged contract: 1) there was no offer or acceptance; 2) the cause was unlawful; and 3) even if there was a contract of sale, it was invalid for lack of agreement as to both the price and the object. (Doc. 95-1 p. 10-20; Doc. 105, p. 2). Defendants argue the emails in question merely show "preliminary discussions of a possible joint venture" and not a completed contract. (Doc. 105, p. 3). Defendants further argue that the $1.15 million in fees collected was generated from cases expressly excluded from whatever contract the parties may have contemplated. They point to the same emails to support this contention. (Doc. 105, p. 3).

Defendants also argue that Plaintiffs' claim for $1 million in ordinary damages is improperly calculated. Further, they argue that Plaintiffs' claim for consequential damages is being urged for the first time in their motion for summary judgment—and is thus too late. Regardless, the claim is meritless, Defendants argue, as the Court's prior ruling dismissing the fraud claim against them indicates that they did not act with the bad faith necessary to potentially invoke such damages under Civil Code article 1997. (Doc. 105, p. 10).

Finally, Defendants move for summary judgment on their counterclaim, asserting that there is no genuine dispute as to material fact relating to fees Defendants are owed by Plaintiffs from the Kettering case, a Reglan suit that was specifically excluded from any alleged agreement between the parties. (Doc. 95-1, p. 30).

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant has the burden of proof at trial, it must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, the burden shifts to the nonmovant to show, by affidavit or otherwise, that a genuine [dispute as to] material fact remains for the factfinder to resolve. *Id.* at 323.

## Discussion

Interpretation of contracts is a determining the common intent of the parties. La. Civ. Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. Whether a contract is ambiguous or not is a question of law and thus the Court's duty to determine. *Nickels v. Guarantee Trust Life Ins.*, 563 So. 2d 924, 926 (La. App.

4

1st Cir. 1990); *see also Southern Natural Gas Co. v. Pursue Energy*, 781 F.3d 1079, 1081 (5th Cir. 1986).

### 1. Existence of a Contract

The existence of a contract is a question of law to be decided by the Court. *Kops v. Lee*, 871 So.2d 1187 (La. Ct. App. 4th Cir. 2004). There are four essential requirements for a valid contract: capacity, consent, object, and cause. La. Civ. Code arts 1918, 1927, 1971, 1966. There is no dispute that both parties to the alleged contract had capacity and that the cause was lawful.[1] Object will be discussed below in the Sales discussion.

As for consent, a contract is formed by the consent of the parties established through offer and acceptance. La. Civ. Code art. 1927. The Court finds there is no genuine dispute as to material fact that the parties entered into a contract. The email exchange on March 12-13 provides unambiguous evidence of the parties' intent.

First, it is undisputed that Pittle offered to sell his Reglan case archives to McGlynn. In McGlynn's words, "you [Pittle] want *to sell me* the info and advice you have already acquired, along with some level of limited involvement for $3.5 million (plus). (Doc. 97-5). McGlynn makes it clear that this proposal is unacceptable ("although the info and contacts you have acquired could be useful and of value to our metochlopromide [sic] efforts, they are not indispensible and

---

[1] Defendants assert there was no lawful cause, relying on Rule 1.5(e) of the Rules of Professional Conduct. The Court has already held this relationship was not an attorney fee-sharing agreement governed by this rule. (Doc. 62).

not worth 3.5 million [sic]"). (Doc. 97-5). "That being said," McGlynn continues, "I would really like to work something out with you, if at all possible." *Id.* After a discussion of percentages and dollar ceilings, McGlynn introduces $1 million as a maximum. At the end of the penultimate paragraph, McGlynn summarizes:

> Stated differently,In [sic] exchange for our commitment to pay you 1 million dollars over the next 3 or so years, largely for provision of info you have already acquired, I would think you would be very happy *to sell to us* a commidty [sic] for which there is no other mkt.

*Id.* (emphasis added). The final paragraph begins, "So, the *counter proposal* is 25% of net fees to MG&K, pd to you as cases are settled\completed, up to a total fee of 1 mil is reached. If you do not believe this is fair and reasonable, it is best we don't proceed…" *Id.* (emphasis added). The Court finds no genuine dispute as to material fact that an offer was made from Defendant McGlynn to Plaintiff Pittle.

In his reply email on March 13, Plaintiff Pittle begins, "I'm going to say yes to your proposal as stated below." *Id.* Defendants make much of this "as stated below," arguing that what follows in Pittle's email is a modification of the offer, and thus merely a counteroffer. (Doc. 95-1, p. 5). As evidence, Defendants point first to Pittle's statement in his email that he would contribute not only his prior work product, but also "actively participate in each case…from beginning to end." *Id.* Defendants seem to be arguing that, because this was more than McGlynn's counteroffer contained, it was not an acceptance. The Court finds,

6

however, that this is not a genuine dispute: Pittle was simply stating his intention to do more than his end of the bargain. In Louisiana, this is called lagniappe. Second, Defendants point to Pittle's statement that "for every $1 million that is paid to me, you will receive $3 million, plus reimbursement of your expenses." *Id*. The Court finds this dispute is not genuine: the statement is merely a mathematical explication of the contract. This is the same for Pittle's next statement, that he would not receive anything unless "we jointly do the work…" to get verdicts or settlements—this is a statement of fact that Plaintiffs would not get any money unless Defendants were successful in getting judgments or settlements.

Defendants also seem to claim that the "details" Pittle wrote were "important" to him—weekly phone calls, exchanging contact information, and an agreement to return calls "ASAP,"—are evidence of a counteroffer and that McGlynn's reply of "sounds like a good start" indicates McGlynn is willing to negotiate further. (Doc. 95-1, p. 6).[2] The Court finds that Pittle's statements were simply minor details and not of the type that change the nature of the terms of the agreement. *See* La. Civ. Code art. 2601 (where acceptance is not conditioned on additional terms, they are regarded as proposals for modification and must be accepted by the offeror in order to become a part of the contract.).

---

[2] The Court uses "seem" because Defendants do not make any contention at all in their Motion of Summary Judgment, they simply state these facts with no indication of how they help their case.

In short, the Court finds there is no genuine dispute as to whether the parties consented to enter a contract: it is clear that McGlynn made a counter proposal to Pittle and that Pittle, by saying "yes", accepted the counter proposal. The evidence unambiguously shows there was an offer and acceptance and thus, there was a contract between the parties.

**2. The Contract was One of Sale**

The thing, the price, and the consent of the parties are requirements for the perfection of a sale. La. Civ. Code art. 2439. Parties may contract for any object that is determined or determinable, so long as it is legal and possible. La. Civ. Code art. 1971. The Court further finds parties entered into a contract of sale. In making this determination, the Court looks to the emails.

The Court finds the contract entered into between Defendant McGlynn and Plaintiff Pittle on March 13, 2007 was not ambiguous. As stated above, McGlynn offered to pay Pittle one million dollars ($1 million) over time by giving twenty-five percent (25%) of net fees from future Reglan cases to Pittle. As for what McGlynn was to receive, at various points in his email he refers to "the info and contacts you have acquired," (McGlynn email, 97-5 at ¶ 1), "info and advice you have already acquired, along with some level of limited involvement" (*Id.* at ¶ 3), "largely for provision of info you have already acquired" (*Id.*). After stating his counter proposal, McGlynn writes that for his money he "would expect alot [sic] of information, contacts, advice, and happily provided input, not a disgruntled participant." (*Id.* at ¶ 4). The Court has previously held that "the evidence,

depositions, medical articles, internal corporate memos, and other documents—all compiled and/or authored by Plaintiffs—constituted the 'work' that Defendants requested in regards to the parties' agreement." (Doc. 62, p. 4). The Court holds that this work constituted a determined or determinable object of sale.[3] Further, the Court finds it was the intent of the parties to enter into a contract under which Plaintiffs would provide Defendants the information, advice, contacts, and other materials Plaintiff Pittle had accumulated during his time prosecuting Reglan cases. In exchange for this, Defendants were to give Plaintiffs $1 million payable in the form of 25% of their net fees from future Reglan cases. As there is an object and a price and consent, the Court finds this contract to be one of sale.[4]

### 3. Breach of the Contract

It is clear that, up to this point, Defendants have not given Plaintiffs any of the $1 million price called for by the contract. Thus, there is no genuine dispute over whether Defendants have breached the contract. There is, however, a genuine dispute as to whether Plaintiffs have performed their obligation under the contract. In the emails dated May 11, 12, and 15, Plaintiff Pittle and Defendant McGlynn discuss Pittle's performance under their agreement. (Doc. 97-23, p. 1-

---

[3] Defendants also allege that Plaintiffs were forbidden from sharing this information with them by a protective order related to the Kettering case. As the Kettering case is not at issue in Plaintiffs' claim, it is not relevant. Regardless, the Court finds there is no genuine dispute as to the issue: the evidence provided by Plaintiffs clearly shows Wyeth's counsel (the defendant in the Kettering case) clearly understood Pittle was sharing the information with McGlynn—and did not object to it. (Doc. 114, p. 8). There is no genuine dispute as to whether Pittle was prohibited from sharing the information of the Kettering case with Defendants.

[4] Defendants persist in their argument that the contract, if it existed, was one of Joint Venture. (Doc. 95-1, p. 25-26). The evidence does not point to a genuine dispute on this issue: the elements of a joint venture are not met in that there was no juridical entity or person established to oversee the venture.

3). And while McGlynn clearly seems disappointed with what Pittle has provided, the emails indicate that Pittle has provided at least some of the information he promised. This evidence shows a genuine dispute as to a material fact, Plaintiffs' performance. Therefore, summary judgment is not appropriate on this issue.

**4. Damages**

In Louisiana, an obligor is liable for the damages caused by his failure to perform a conventional obligation. La. Civ. Code art. 1994. Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. La. Civ. Code art. 1995. The deprivation of profit is the increase the oblige would have realized had the expected performance been rendered by the obligor. 6 LACIVL § 4.5, *citing* Fuller & Perdue, "The Reliance Interest in Contract Damages," 46 Yale L.J. 52, 53-54. An obligor is only liable for the damages that were foreseeable at the time the contract was made. La. Civ. Code art. 1996. Whether Plaintiffs are entitled to damages will depend on whether they performed their obligations under the contract. If they are entitled to damages, the Court finds there is no genuine dispute as to how the amount should be calculated.

Plaintiffs have provided evidence that the Defendants have collected more than $1.15 million in net fees from Reglan cases since entering into the contract. (Doc. 90-4). As the Court has determined that the contract unambiguously calls for Plaintiff to receive 25% of net fees from those cases, up to $1 million, there is no genuine dispute that Plaintiffs would be entitled to 25% of all net fees from

cases not expressly excluded from the contract, up to $1 million. There exists genuine dispute as to the current amount of net fees and which cases have been excluded; therefore this issue is for the jury to decide.

In their motion, Plaintiffs for the first time seek consequential damages. They base their argument on Civil Code article 1997, which allows for all damages, foreseeable or not, that are a direct consequence of his failure to perform, where the obligor is in bad faith. And while the Court's earlier ruling dismissing the fraud claim (doc. 62) against Defendants does not preclude a finding of bad faith, La. Civ. Code art. 1997 cmt. c, the Plaintiffs have pointed to no evidence to show that Defendants were in bad faith.

Even if Defendants were found to be in bad faith, the Court agrees with Defendants that it is too late to raise this claim. Items of special damage must be specifically alleged in the pleadings. Fed. R. Civ. P. 9(g). Plaintiffs have brought their claim more than two years into the litigation and less than three months before trial. The Court finds this does not give the Defendants enough time to prepare a defense on this subject. Therefore, the Court grants summary judgment in favor of Defendants and against Plaintiffs on the issue of consequential damages.

### 5. Defendants' Counterclaim

Defendants seek summary judgment on their claim of breach of contract regarding the Kettering case, specifically that Plaintiffs owe Defendants a share of the fees from that case. As evidence, they point to the same series of emails.

The Court finds these emails show a genuine dispute as to a material fact. In his acceptance of Defendant McGlynn's counter offer, Plaintiff Pittle says in reference to the Kettering case, "the one case for which we don't have an agreement is Kettering and I'm proposing that we equally divide the net after paying local counsel." (Doc. 90-3). This clearly shows an offer, but there is an absence of an acceptance in the emails. Thus, there is a genuine dispute as to the contract regarding the Kettering case and summary judgment is inappropriate for the counter claim.

## **Conclusion**

Accordingly, the Court hereby GRANTS Plaintiffs' Motion (doc. 90) on the issue of formation of a contract and DENIES on the issue of breach and damages*.* The Court GRANTS Defendants Summary Judgment on the issue of consequential damages. Defendants' motion for summary judgment on theirSeptember 1, 2011 counterclaim is DENIED.

Signed in Baton Rouge, Louisiana, on September 1, 2011.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**